UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TERRY ANTHONY BALL, | Case No. 3:18-cv-00249-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| RENEE BAKER, *et al.*, | |
| Respondents. | |

**I.    SUMMARY**

Petitioner Terry Ball filed a petition for writ of *habeas corpus* under 28 U.S.C. § 2254. (ECF No. 5 ("Petition").) This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court denies the Petition and denies Petitioner a certificate of appealability.

**II.    BACKGROUND**

Petitioner challenges his 2014 Nevada state conviction, pursuant to a guilty plea, on three counts of robbery with use of a deadly weapon. (ECF No. 10-32.) In addition to the three counts of robbery with use of a deadly weapon, Petitioner was also charged with one count of being an ex-felon in possession of a firearm and one count of possession of a short-barreled firearm. (ECF Nos. 10-4, 10-5, 10-7.)

At Petitioner's preliminary hearing, the justice court found the State presented sufficient evidence for Petitioner to be bound over to the Second Judicial District Court. (ECF No. 10-8 at 119.)[1] A witness, who was an employee of the Pyramid Kwik Serv gas

---

[1]The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions as background to the issues presented in this case and does not summarize all material presented in the state court. No statement of fact made in describing statements, testimony or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of *(fn. cont…)*

1  station located in Sparks, Nevada, testified that on August 22, 2013, an individual entered

2  the gas station, walked to the back of the store, and approached the counter. (*Id.* at 25.)

3  The individual lifted his shirt up with his right hand to expose the black butt of a gun to the

4  employee. (*Id.* at 25-26, 31.) The individual stated he would shoot if the employee did not

5  give him the money. (*Id.* at 30.) The employee placed about $450 to $500 on the counter

6  for the individual. (*Id.* at 32-33.) As a witness, the employee identified Petitioner in open

7  court as the individual who robbed the gas station. (*Id.* at 29.)

8       Another witness testified that while she was working at the front desk at La Quinta

9  Inn located in Reno, Nevada on August 28, 2013, an individual approached her, pulled

10  his hooded sweatshirt up on the right side to expose a black revolver with a brown handle,

11  and instructed her to give him all of the money in the register. (*Id.* at 41-43.) The witness

12  opened the register and gave the money in the register to the individual. (*Id.* at 44.) The

13  witness identified Petitioner in open court as the individual who robbed La Quinta Inn. (*Id.*

14  at 46-47.)

15       A former employee of McCarran Mart located in Sparks, Nevada, and witness to a

16  robbery there on August 10, 2013, testified that a man lifted his shirt up to expose what

17  appeared to be the handle of a nine-millimeter gun and stated, "[g]ive me the money.

18  Don't push no buttons." (*Id.* at 92-95.) The former employee gave the individual the cash

19  and then called the police. (*Id.* at 96.) When the police presented the former employee

20  with photographs, the former employee did not identify Petitioner as the individual who

21  robbed McCarran Mart. (*Id.* at 98-99.)

22       On the night Petitioner was arrested, Petitioner was a passenger in a Ford

23  Expedition parked at Sundance Motor Lodge. (*Id.* at 62.) The vehicle was searched, and

24  detectives seized, *inter alia*, a shotgun that had a sawed-off barrel and two different

25  handguns. (*Id.* at 63, 67, 74-75.) A detective testified that one of the handguns was a

26  "revolver type pistol" he believed was a "pellet gun" with a "wood type grip." (*Id.* at 75.)

27

28  evidence in this overview does not signify that the Court has overlooked the evidence in
considering Petitioner's claim.

1    Another handgun retrieved from the vehicle was described by the detective as "an Airsoft

2    gun, plastic, looks like a semiautomatic pistol" and "shoots plastic pellets." (*Id.* at 75, 77.)

3    The detective further testified the two pistols were not firearms. (*Id.* at 77.)

4    Petitioner pled guilty to three counts of robbery with use of a deadly weapon

5    pursuant to the June 18, 2014 guilty plea agreement and plea colloquy. (ECF Nos. 10-

6    26, 10-27.) In exchange, the State agreed to: (A) dismiss charges in DA case number 13-

7    176753; (B) dismiss charges in DA case number 14-11984; (C) drop the charge of being

8    an ex-felon in possession of a firearm in the third-amended complaint; and (D) drop the

9    charge of possession of a short barreled shotgun in the third-amended complaint. (ECF

10   Nos. 10-25, 10-26 at 6-7, 10-27 at 5.) Petitioner was arraigned. The district court judge

11   had the counts, which substantially tracked the language of the amended information,

12   read aloud and asked Petitioner if Petitioner committed acts alleged in each count. (ECF

13   No. 10-26 at 10-11.) Petitioner affirmed he did. (*Id.* at 12.) The judgment of conviction

14   was filed on October 2, 2014. (ECF No. 10-32.)

15   Petitioner was sentenced on each count of robbery with a term of 24 months to

16   120 months for use of a deadly weapon, and a term of 24 months to 60 months for the

17   deadly weapon enhancement – all sentences to run consecutively. (ECF Nos. 10-31 at

18   28-29, 10-32.) Petitioner appealed and the Nevada Court of Appeals affirmed judgment

19   of conviction on October 18, 2015. (ECF No. 11-29.) Petitioner then filed a state habeas

20   petition, and the State filed a motion to dismiss the petition. The state district court granted

21   the State's motion and found an evidentiary hearing was not warranted as Petitioner did

22   not establish prejudice. (ECF No. 12-20.) The Nevada Court of Appeals affirmed the

23   dismissal of the petition. (ECF No. 12-29.)

24   Petitioner dispatched his federal habeas petition on May 30, 2018 and filed it on

25   July 3, 2018. (ECF Nos. 1, 5.) The Court granted Respondents' motion to dismiss (ECF

26   No. 9), in part, finding Grounds 1 and 3 as noncognizable in federal habeas and denied,

27   in part, as to Ground 2. (ECF No. 15.) In the two remaining grounds, Petitioner asserts

28   ///

3

1  the following instances of ineffective assistance of counsel in violation of Petitioner's

2  federal constitutional rights:

3        Ground 2: Petitioner's trial counsel failed to advise Petitioner that proof of
the guns' actual lethal capabilities was necessary under Nevada law for the

4        imposition of the deadly weapon enhancement.

5        Ground 4: Petitioner's appellate counsel failed to raise the issue of whether

6        toy guns can support the imposition of a deadly weapon enhancement on
direct appeal.

7

8  (ECF No. 5 at 11-14, 17-18.)

9  **III.    LEGAL STANDARD**

10        **A.    Review under the Antiterrorism and Effective Death Penalty Act**

11        28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in

12  *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

13        An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect

14        to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

15

16        (1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the

17        Supreme Court of the United States; or

18        (2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

19

20  28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme

21  Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a

22  rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state

23  court confronts a set of facts that are materially indistinguishable from a decision of [the

24  Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v.

25  Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694

26  (2002)). A state court decision is an unreasonable application of clearly established

27  Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court

28  identifies the correct governing legal principle from [the Supreme] Court's decisions but

1    unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75. "The

2    'unreasonable application' clause requires the state court decision to be more than

3    incorrect or erroneous. The state court's application of clearly established law must be

4    objectively unreasonable." *Id.*

5          The Supreme Court has instructed that "[a] state court's determination that a claim

6    lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

7    on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

8    (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case

9    for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at

10   102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181

11   (2011) (internal quotation marks and citations omitted) (describing the standard as a

12   "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which

13   demands that state-court decisions be given the benefit of the doubt").

14          **B.       Standard for evaluating an Ineffective-Assistance-of-Counsel claim**

15          In *Strickland*, the Supreme Court propounded a two-prong test for analysis of

16   claims of ineffective assistance of counsel requiring Petitioner to demonstrate that: (1) the

17   attorney's "representation fell below an objective standard of reasonableness[;]" and (2)

18   the attorney's deficient performance prejudiced Petitioner such that "there is a reasonable

19   probability that, but for counsel's unprofessional errors, the result of the proceeding would

20   have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts

21   considering a claim of ineffective assistance of counsel must apply a "strong presumption

22   that counsel's conduct falls within the wide range of reasonable professional assistance."

23   *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel

24   was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

25   Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner "to

26   show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*

27   at 693. Rather, the errors must be "so serious as to deprive the [Petitioner] of a fair trial,

28   a trial whose result is reliable." *Id.* at 687. When the ineffective-assistance-of-counsel

1  claim is based on a guilty plea challenge, the *Strickland* prejudice prong requires

2  Petitioner to demonstrate "there is a reasonable probability that, but for counsel's errors,

3  [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*

4  *v. Lockhart*, 474 U.S. 52, 59 (1985).

5      Under *Hill*, a challenge to the voluntariness of a plea may be based upon a claim

6  of ineffective assistance of counsel. As the Supreme Court observed:

7  
> For example, where the alleged error of counsel is a failure to investigate or
> discover potentially exculpatory evidence, the determination whether the
8  > error "prejudiced" [Petitioner] by causing him to plead guilty rather than go
> to trial will depend on the likelihood that discovery of the evidence would
9  > have led counsel to change his recommendation as to the plea. This
> assessment, in turn, will depend in large part on a prediction whether the
10 > evidence likely would have changed the outcome of a trial. Similarly, where
> the alleged error of counsel is a failure to advise [Petitioner] of a potential
11 > affirmative defense to the crime charged, the resolution of the "prejudice"
> inquiry will depend largely on whether the affirmative defense likely would
12 > have succeeded at trial. . . . As we explained in *Strickland v. Washington*,
> *supra*, these predictions of the outcome at a possible trial, where necessary,
13 > should be made objectively, without regard for the "idiosyncrasies of the
> particular decisionmaker."

14

15 *Id.* at 59-60 (citing *Strickland*, 466 U.S. at 695). Where a state district court previously

16 adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing

17 the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05.

18 In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly

19 deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see*

20 *also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks

21 omitted) ("When a federal court reviews a state court's *Strickland* determination under

22 AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme

23 Court's description of the standard as doubly deferential."). The Court further clarified,

24 "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.

25 The question is whether there is any reasonable argument that counsel satisfied

26 *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

27 ///

28 ///

1    IV.    DISCUSSION

2        **A. Ground 2**

3        Petitioner argues his guilty plea was not voluntary or intelligent because his trial

4    counsel failed to advise Petitioner that under Nevada law, sufficient evidence of the guns'

5    lethal capabilities was necessary for a deadly weapon enhancement. (ECF No. 5 at 11-

6    14.) Respondents counter that Petitioner's written affirmations in the guilty plea

7    memorandum and contemporaneous on-the-record statements at Petitioner's

8    arraignment demonstrate Petitioner's plea was intelligent and voluntary. (ECF No. 17 at

9    5-10.) Respondents further argue Petitioner failed to establish prejudice and the Nevada

10   Court of Appeals applied the correct federal constitutional standard in its dismissal of

11   Petitioner's state habeas petition. (*Id.* at 10-11.)

12       In Petitioner's state habeas appeal, the Nevada Court of Appeals held as follows:

13           In his petition, Ball claimed he received ineffective assistance of trial
         and appellate counsel. To establish ineffective assistance of trial counsel, a
14       petitioner must demonstrate counsel's performance was deficient because
         it fell below an objective standard of reasonableness, and resulting
15       prejudice in that there is a reasonable probability, but for counsel's errors,
         the petitioner would not have pleaded guilty and would have insisted on
16       going to trial. *Kirksey v. State*, 112 Nev. 980, 997-88, 923 P.2d 1102, 1107
         (1996).

17
           . . .
18
             Ball claimed trial counsel were ineffective for (1) failing to investigate
19       whether he used toy guns to commit his robberies, [FN2] (2) failing to object
         to the deadly-weapon argument the State made during the preliminary
20       hearing, and (3) allowing him to enter guilty pleas to charges that included
         the use of a deadly weapon. Ball further claimed appellate counsel was
21       ineffective for failing to raise the issue of whether toy guns can support the
         imposition of a deadly weapon enhancement.
22
                   [FN2] Ball did not argue he used a toy gun on direct appeal
23             and there is nothing in the record before this court that
               indicates Ball used a toy gun. Further, Ball pleaded guilty to
24             using a deadly weapon.

25           The district court found even if counsel had investigated whether the
         toy guns were actually real guns, or raised the issue on appeal, Ball would
26       not have been entitled to relief. Ball used the guns to provoke a deadly
         reaction from the robbery victims. And the Nevada Supreme Court has
27       consistently held that an inoperable firearm, which would necessarily
         include a toy gun in this case, is considered a deadly weapon for purposes
28       of the sentence enhancement because its use may provoke a deadly
         reaction from the victim or from the bystanders.

1

2          The record supports the district court's findings and we conclude it
          did not err by dismissing Ball's postconviction habeas petition. *See Barnhart*

3          *v. State*, 122 Nev. 301, 304-05, 130 P.3d 650, 652 (2006) ("Whether [a] gun
          was actually loaded and capable of firing bullets in a deadly fashion is of no

4          consequence in determining whether it is a deadly weapon . . . even an
          inoperative firearm is considered a deadly weapon for purpose of the

5          sentence enhancement because its use may provoke a deadly reaction
          from bystanders.")

6    (ECF No. 12-29 at 2, 3-4 (internal brackets omitted).) The Nevada Court of Appeals'

7    rejection of Petitioner's ineffective-assistance-of-counsel claim for failing to demonstrate

8    prejudice was neither contrary to nor an objectively unreasonable application of

9    *Strickland.*

10          The Nevada Court of Appeals reasonably found Petitioner would not plead

11   differently and insisted on going to trial if his trial counsel advised him the State needed

12   to prove the guns at issue were capable of inflicting lethal harm to impose the deadly

13   weapon enhancement. The additional information Petitioner claims his counsel should

14   have given him would not have led to a different action because the defense that

15   Petitioner used toy guns would not have been successful. Specifically, the Court of

16   Appeals relied on Nevada law that even inoperable firearms, including toy guns, are

17   considered deadly weapons for purposes of sentence enhancement because their use

18   may provoke a deadly reaction. (ECF No. 12-29 at 3.) On habeas review, federal courts

19   do not second-guess state courts on matters of state law. *See Waddington v. Sarausad*,

20   555 U.S. 179, 192, n.5 (2009) (citation omitted) ("The Washington Supreme Court

21   expressly held that the jury instruction correctly set forth state law . . . and we have

22   repeatedly held that 'it is not the province of a federal habeas court to reexamine state-

23   court determinations on state-law questions.'"

24          To obtain relief on this type of claim, "[P]etitioner must convince the court that a

25   decision to reject the plea bargain would have been rational under the circumstances."

26   *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In exchange for a guilty plea, the State

27   agreed to drop two separate felony charges in the third-amended complaint and dismiss

28   charges against Petitioner in two separate cases. (ECF Nos. 10-25, 10-26 at 6-7, 10-27

at 5.) If Petitioner rejected the plea agreement and proceeded to trial, Petitioner would have faced two additional felony charges as well as two additional, separate cases. Petitioner's proffered argument that proof of the guns' actual lethal capabilities was necessary would have failed as Nevada law considers inoperable firearms as deadly weapons for purposes of the sentence enhancement. The Nevada Court of Appeals reasonably found Petitioner failed to demonstrate a reasonable probability that trial counsel's failure to give Petitioner correct advice would cause a rational defendant in Petitioner's situation to plead not guilty and go to trial. *See Hill*, 474 U.S. at 59-60. Petitioner is therefore denied federal habeas relief for Ground 2.

### B.  Ground 4

Petitioner also argues his appellate counsel was ineffective for failing to raise the issue of whether toy guns can support the imposition of a deadly weapon enhancement. (ECF No. 5 at 17-18.) Respondents respond that Petitioner would not have succeeded on appeal because the "toy gun" issue was "legally insufficient." (ECF No. 15 at 14.) The Nevada Court of Appeals determined the record supports the state district court's findings that "even if [appellate] counsel had . . . raised the issue on appeal, [Petitioner] would not have been entitled to relief." (ECF No. 12-29 at 3.) The Court of Appeals relied on Nevada Supreme Court case law which "has consistently held that an inoperable firearm, which would necessarily include a toy gun in this case, is considered a deadly weapon for purposes of the sentence enhancement because its use may provoke a deadly reaction from the victim or from the bystanders." (*Id.*)

To prevail on his ineffective-assistance-of-appellate-counsel claim, Petitioner must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, Petitioner "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy

1  requires weeding out weaker issues with less likelihood of success. The failure to present

2  a weak issue on appeal neither falls below an objective standard of competence nor

3  causes prejudice to the client for the same reason—because the omitted issue has little

4  or no likelihood of success on appeal. *Id.*

5       The Nevada Court of Appeals reasonably determined Petitioner failed to

6  demonstrate prejudice. There is no reasonable probability the submission that proof of

7  the lethal capabilities of the toy guns was required to support the imposition of the deadly

8  weapon enhancement would have changed the outcome of the appeal. At the preliminary

9  hearing, three witnesses testified that an individual robbed their places of employment by

10  partially exposing a handgun tucked into the individual's waistband and instructing the

11  witnesses to give the individual money. (ECF No. 10-8.) Two of the witnesses identified

12  Petitioner as the individual in open court. (*Id.* at 29, 46-47.) Nonetheless, Petitioner

13  pleaded guilty and affirmed he committed the acts alleged in each count of robbery with

14  a deadly weapon. (ECF No. 10-26 at 12.) Petitioner would not have prevailed on appeal

15  if his appellate counsel raised Petitioner used toy guns not capable of being lethal

16  because Nevada law considers inoperable firearms, including toy guns, deadly weapons

17  for the purposes of sentence enhancement as their use may provoke a deadly reaction.

18  Because the Court of Appeals reasonably denied Petitioner's ineffective-assistance-of-

19  appellate-counsel claim, Petitioner is denied federal habeas relief on Ground 4.

20  **V.    CERTIFICATE OF APPEALABILITY**

21       This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section

22  2254 Cases requires this Court to issue or deny a certificate of appealability ("COA").

23  Therefore, this Court has *sua sponte* evaluated the claims, Grounds 1 through 4, within

24  the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

25  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to § 2253(c)(2), a COA may

26  issue only when the petitioner "has made a substantial showing of the denial of a

27  constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits,

28  a petitioner "must demonstrate that reasonable jurists would find the district court's

1  assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

2  473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this

3  standard, this Court finds that a certificate of appealability is unwarranted.

4  **VI.    CONCLUSION**

5      It is therefore ordered that Petitioner's writ of *habeas corpus* (ECF No. 5) is denied.

6      It is further ordered that a certificate of appealability is denied.

7      The Clerk of Court is directed to enter judgment accordingly.

8      DATED THIS 19th Day of October 2020.

9

10

11                                          MIRANDA M. DU
                                            CHIEF UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28